UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE, et al.,<br><br>    Defendants. | Civil Action No. 25-1263 (CRC) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
<u>OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARDS ..................................................................................................... 5

ARGUMENT ..................................................................................................................... 7

    I.    The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay Money Under a Contract. ......................................................................................................... 7

    II.   Program Funding Decisions Are Committed to Office Discretion by Law ..................... 15

    III.  Plaintiff Fails to State a Plausible Due Process Claim. ...................................................... 17

    IV.  Plaintiff Fails to State a Plausible First Amendment Claim. ............................................ 21

    V.   Plaintiff Fails to State a Plausible Equal Protection Claim ............................................... 23

    VI.  Plaintiff Has Failed to Carry Its Heavy Burden to Show Entitlement to a Preliminary Injunction. ................................................................................................................................ 24

        A.    Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Harm. ..................... 25

        B.    Plaintiff Has Not Shown a Likelihood of Success on the Merits. ............................... 28

        C.    The Public Interest and Balance of Equities Warrant Denying Plaintiff's Motion. ..... 28

    VII.  Any Relief Should Be Limited in Scope ........................................................................... 29

    VIII.The Court Should, at Minimum, Require a Bond. ............................................................ 31

CONCLUSION ................................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abdullah v. Obama,*
   753 F.3d 193 (D.C. Cir. 2014) ................................................................. 7

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
   570 U.S. 205 (2013) ............................................................................ 22

*AIDS Vaccine Advocacy Coal. v. Dep't of State,*
   Civ. A. No. 25-0400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ........................ 30, 31

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.,*
   840 F. Supp. 2d 327 ............................................................................ 26

*Al-Fayed v. CIA,*
   254 F.3d 300 (D.C. Cir. 2001) ................................................................. 28

*Albrecht v. Comm. on Emp. Benefits,*
   357 F.3d 62 (D.C. Cir. 2004) ................................................... 8, 9, 12, 15

*Allied Progress v. CFPB,*
   Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........................ 24

*Alphapointe v. Dep't of Veterans Affs.,*
   745 F. Supp. 3d 1 (D.D.C. 2020) ............................................................. 9

*Alpine Sec. Corp. v. FINRA,*
   121 F.4th 1314 (D.C. Cir. 2024) ............................................................. 7

*Am. Ass'n of Colls. for Tchr. Educ. v. McMahon,*
   No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) ..................................... 15

*Am. Oversight v. Dep't of Veterans Affs.,*
   498 F. Supp. 3d 145 (D.D.C. 2020) ....................................................... 5, 8

*Am. Sci. & Eng'g, Inc. v. Califano,*
   571 F.2d 58 (1st Cir. 1978) ................................................................. 18

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.,*
   897 F.3d 314 (D.C. Cir. 2018) ............................................................... 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... 6

*Aviles-Wynkoop v. Neal,*
   978 F. Supp. 2d 15 (D.D.C. 2013) ........................................................... 26

*Bolling v. Sharpe,*
   347 U.S. 497 (1954) ......................................................................... 23

*California v. Dep't of Educ.,*
    Civ. A. No. 25-10548, 2025 WL 760825 (D. Mass. Mar. 10, 2025) .................................. 13

*Casa de Cambio Comdiv S.A., de C.V. v. United States,*
    291 F.3d 1356 (Fed. Cir. 2002) .......................................................................... 20

*Changji Esquel Textile Co. v. Raimondo,*
    40 F.4th 716 (D.C. Cir. 2022) ......................................................................... 24-25

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290 (D.C. Cir. 2006) ........................................................................ 26, 27

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
    473 U.S. 432 (1985) ...................................................................................... 23

*CityFed Fin. Corp. v. Off. of Thrift Supervision,*
    58 F.3d 738 (D.C. Cir. 1995) ........................................................................... 25

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.,*
    15 F. Supp. 2d 1 (D.D.C. 1997) ........................................................................ 26

*Cornish v. Dudas,*
    540 F. Supp. 2d 61 (D.D.C. 2008) ..................................................................... 26

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,*
    38 F.4th 1099 (D.C. Cir. 2022) ............................................................. 8, 9, 10, 11, 12

*D.A.M. v. Barr,*
    474 F. Supp. 3d 45 (D.D.C. 2020) ...................................................................... 6

*Davenport v. Wash. Educ. Ass'n,*
    551 U.S. 177 (2007) ...................................................................................... 21

*Davis v. Pension Ben. Guar. Corp.,*
    571 F.3d 1288 (D.C. Cir. 2009) ..................................................................... 24, 28

\*  *Dep't of Educ. v. California,*
    145 S. Ct. 966 (2025)............................................... 1, 7, 13, 14, 15, 26, 27, 29, 31

*Diaz v. Neighbors Consejo,*
    77 F. Supp. 3d 227 (D.D.C) ............................................................................. 5

*Dorfmann v. Boozer,*
    414 F.2d 1168 (D.C. Cir. 1969) ......................................................................... 6

*DSE, Inc. v. United States,*
    169 F.3d 21 (D.C. Cir. 1999) .......................................................................... 31

*EEOC v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997) .......................................................................... 6

iv

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
   15 F. Supp. 3d 32 (D.D.C. 2014) ................................................................................... 25

*Eljalabi v. Blinken*,
   Civ. A. No. 21-1730 (RC), 2022 WL 2752613 (D.D.C. July 14, 2022) ................................. 7

*Franklin-Mason v. Mabus*,
   742 F.3d 1051 (D.C. Cir. 2014) ....................................................................................... 8

*Getty Images News Servs. Corp. v. Dep't of Def.*,
   193 F. Supp. 2d 112 (D.D.C. 2002) ................................................................................ 27

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ........................................................................................... 7, 13, 14

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019) ........................................................................................... 25

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ..................................................................................................... 16

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ................................................................................... 6, 23

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) ............................................................................... 9, 12, 18

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*,
   746 F.2d 855 (D.C. Cir. 1984) ....................................................................................... 16

*John Doe Co. v. CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017) (per curiam) ................................................................. 26

*Keepseagle v. Vilsack*,
   815 F.3d 28 (D.C. Cir. 2016) ........................................................................................... 5

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*,
   56 F.3d 279 (D.C. Cir. 1995) .................................................................................... 10, 11

*Kimberlin v. Dep't of Just.*,
   318 F.3d 228 (D.C. Cir. 2003) ....................................................................................... 22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ....................................................................................................... 8

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ........................................................................................... 25

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................................................... 15, 16, 17

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ................................................................ 29

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ................................................ 7

*Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*,
  Civ. A. No. 25-30041, 2025 WL 1225481 (D. Mass Apr. 14, 2025) ............................. 14-15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ................................................................ 8

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ................................. 9, 10, 17, 18

*Michael M. v. Superior Court*,
  450 U.S. 464 (1981) ............................................................. 23

*Milk Train, Inc. v. Veneman*,
  310 F.3d 747 (D.C. Cir. 2002) ............................................... 17

*Munaf v. Geren*,
  553 U.S. 674 (2008) ............................................................. 24

*N. Star Alaska v. United States*,
  14 F.3d 36 (9th Cir. 1994) .................................................... 18

*Nat'l Treas. Emps. Union v. United States*,
  927 F.2d 1253 (D.C. Cir. 1991) .............................................. 27

*Nat'l Urb. League v. Trump*,
  Civ. A. No. 25-0471 (TJK), 2025 WL 1275613 (D.D.C. May 2, 2025) ................... 19, 22, 23

*Navab-Sfavi v. Broad. Bd. of Governors*,
  650 F. Supp. 2d 40 (D.D.C. 2009) .......................................... 11

*Neb. Dep't of Health & Hum. Servs. v. U.S. Dep't of Health & Hum. Servs.*,
  435 F.3d 326 (D.C. Cir. 2006) ............................................... 29

*Norman v. United States*,
  429 F.3d 1081 (Fed. Cir. 2005) ............................................. 20

*Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*,
  Civ. A. No. 90-0482 (RCL), 1990 WL 134841 (D.D.C. Sept. 6, 1990) ................. 17, 18, 20

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
  48 F. Supp. 3d 87 (D.D.C. 2014) ........................................... 25

*Perry Capital LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ................................. 8, 9, 10, 13

*Plyler v. Doe*,
    457 U.S. 202 (1982) ........................................................................................... 23

*Pub. Citizen Health Rsch. Grp. v. Acosta*,
    363 F. Supp. 3d 1 (D.D.C. 2018) ...................................................................... 25

*Redondo-Borges v. Dep't of Hous. & Urb. Dev.*,
    421 F.3d 1 (1st Cir. 2005)......................................................................... 19, 23

*Regan v. Taxation with Representation of Wash.*,
    461 U.S. 540 (1983) ................................................................................... 21, 22

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ............................................................................. 1, 21, 22

*Sampson v. Murray*,
    415 U.S. 61 (1974) .......................................................................................... 25

*Sandoval v. Dep't of Just.*,
    322 F. Supp. 3d 101 (D.D.C. 2018) .................................................................. 5

*Save Jobs USA v. Dep't of Homeland Sec.*,
    105 F. Supp. 3d 108 (D.D.C. 2015) ................................................................ 24

*Shaffer v. Veneman*,
    325 F.3d 370 (D.C. Cir. 2003) .......................................................................... 9

*Sharifymoghaddam v. Blinken*,
    Civ. A. No. 23-1472 (RCL), 2023 WL 8047007 (D.D.C. Nov. 17, 2023) ............ 7

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) ...................................................................... 13

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ................................................................... 24, 25

*Singh v. Berger*,
    56 F.4th 88 (D.C. Cir. 2022) ........................................................................... 27

*Sols. in Hometown Connections v. Noem*,
    Civ. A. No. 25-0885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ......................... 14

*Spectrum Leasing Corp. v. United States*,
    764 F.2d 891 (D.C. Cir. 1985) ............................................................... 11, 12, 13

*Suburban Mortg. Assocs., Inc. v. Dep't of Hous. & Urb. Dev.*,
    480 F.3d 1116 (Fed. Cir. 2007) ...................................................................... 18

*TigerSwan, Inc. v. United States*,
    110 Fed. Cl. 336 (2024) ................................................................................. 12

*Tootle v. Sec'y of Navy*,
 446 F.3d 167 (D.C. Cir. 2006) ........................................................................ 11

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
 967 F.2d 598 (D.C. Cir. 1992) ......................................................................... 9

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
 922 F. Supp. 273 (D. Ariz. 1996) .................................................................. 18

*Twin Metals Minn. LLC v. United States*,
 Civ. A. No. 22-2506 (CRC), 2023 WL 5748624 (D.D.C. Sept. 6, 2023) ............. 12

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
 No. 25-5066, 2025 U.S. App. LEXIS 8140 (D.C. Cir. Mar. 28, 2025) ........... 1, 15

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
 Civ. A. No. 25-0465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025) ......... 14, 15, 31

*United States v. Testan*,
 424 U.S. 392 (1976) ...................................................................................... 20

*Univ. of Cal. Student Ass'n v. Carter*,
 Civ. A. No. 25-0354 (RDM), 2025 WL 542586 (D.D.C. Feb. 17, 2025) ......... 6, 7

*Varghese v. Blinken*,
 Civ. A. No. 21-2597 (CRC), 2022 WL 3016741 (D.D.C. July 29, 2022) ............ 7

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) .......................................................................................... 24

*Wis. Gas Co. v. FERC*,
 758 F.2d 669 (D.C. Cir. 1985) (per curiam) ................................................... 27

*Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*,
 93 F.3d 910 (D.C. Cir. 1996) ........................................................................ 23

*Ysursa v. Pocatello Educ. Ass'n*,
 555 U.S. 353 (2009) ...................................................................................... 21

**Statutes**

5 U.S.C. § 701 ................................................................................... 1, 15, 17

5 U.S.C. § 702 .......................................................................................... 8

28 U.S.C. § 1491 ................................................................................... 1, 9

31 U.S.C. § 6305 ....................................................................................... 2

34 U.S.C. § 12291 .................................................................................. 16

Consolidated Appropriations Act, 2024, Pub. L. No. 118-72, 138 Stat. 25 ................. 16

**Regulations**

2 C.F.R. § 182.620 ................................................................................ 2, 28, 29

2 C.F.R. § 182.650 ........................................................................................... 2

2 C.F.R. § 200.340 .................................................................................. 3, 4, 19

**Rules**

Fed. R. Civ. P. 12 ............................................................................... 5, 6, 15, 23

Fed. R. Civ. P. 65 ......................................................................................... 31

LCvR 7 ........................................................................................................ 7

Defendants, the Department of Justice (the "Department"), Attorney General Pamela J. Bondi, and Deputy Attorney General Todd Blanche, respectfully submit this combined motion to dismiss Plaintiff's Complaint (ECF No. 1) and opposition to Plaintiff American Bar Association's motion for temporary restraining order or, in the alternative preliminary injunction (ECF No. 4).

## INTRODUCTION

This action brings Administrative Procedure Act ("APA") and due process claims pertaining to the Department's Office on Violence Against Women's ("Office" or "OVW") termination of Plaintiff's cooperative agreements. These claims are, in essence, contract-based claims for monetary relief against the federal government, claims over which this Court lacks subject-matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491. Indeed, a recent Supreme Court order in a near-identical case confirms that federal district courts lack jurisdiction under the APA "to order the payment of money" under a contract—the very relief that Plaintiff demands here. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam); *see also U.S. Conf. of Cath. Bishops v. Dep't of State*, No. 25-5066, 2025 U.S. App. LEXIS 8140, at *1 (D.C. Cir. Mar. 28, 2025) (denying motion for injunction in similar case). APA review is unavailable in any event because Defendants' discretionary decisions regarding the allotment of appropriated funds constitutes unreviewable agency action. 5 U.S.C. § 701(a)(2).

Plaintiff's remaining constitutional claims likewise fail. Plaintiff's First Amendment claim should be dismissed because the government "can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Rust v. Sullivan*, 500 U.S. 173, 193 (1991). Lastly, Plaintiff's equal protection claim fails because Plaintiff has failed to plausibly allege that it is being treated differently from similarly situated

organizations (i.e., organizations receiving funding from the Office that likewise do not effectuate the Office's priorities). The Complaint should accordingly be dismissed in its entirety.

Even if the Court were to deny Defendants' motion to dismiss in full or in part, Plaintiff's motion for a temporary restraining order or, in the alternative, preliminary injunction, which is premised solely on Plaintiff's APA and First Amendment claims, should be denied. Plaintiff fails to demonstrate a substantial likelihood of success on the merits, fails to demonstrate irreparable harm, and fails to demonstrate that the balance of equities warrants injunctive relief. Accordingly, Plaintiff fails to demonstrate that it is entitled to the extraordinary remedy of a preliminary injunction.

Lastly, even if the Court were to grant Plaintiff's motion, it should narrow the relief requested and order Plaintiff to post a bond.

## BACKGROUND

The Office on Violence Against Women administers its Training and Technical Assistance Initiative through the use of cooperative agreements. Compl. (ECF No. 1) ¶¶ 23, 58; *see also* 2 C.F.R. § 182.620 ("Cooperative agreement means an award of financial assistance that, consistent with 31 U.S.C. § 6305, is used to enter into the same kind of relationship as a grant (see definition of grant in [2 C.F.R.] § 182.650), except that substantial involvement is expected between the Federal agency and the recipient when carrying out the activity contemplated by the award."); Declaration of Erin M. Lorah ("Lorah Decl.," attached) ¶ 3; Compiled Award Documents (Ex. 1, attached). These cooperative agreements "are awarded following an open application process and are extremely competitive." Compl. ¶ 24. This case concerns "five active" cooperative agreements—which have now been terminated—originally "totaling $3.2 million." *Id.* ¶ 46; *see also* Compiled Award Documents (Ex. 1); Lorah Decl. ¶ 4 (identifying remaining

fund amounts).  On April 10, 2025, the Office sent Plaintiff a letter stating that these cooperative agreements were formally "terminated because a Department review of them has concluded that they 'no longer effectuate[ ] the . . . agency priorities.'"  Termination Ltr. (ECF No. 4-2) at 19 (alterations in original; quoting 2 C.F.R. § 200.340(a)(4)).  Two additional cooperative agreements were referenced in the April 10, 2025, termination letter, but these two "had already ended on March 31, 2025, and were already in the closeout period."  Compl. ¶ 57.  In other words, these two cooperative agreements had ended by their terms less than two weeks before the letter was sent. *See id.*

The seven cooperative agreements comprised: (1) the Civil Litigation Skills Project, which was funded by a $1,000,000 award for October 1, 2022, through September 30, 2025, *id.* ¶ 48; *see also* Compiled Award Documents (Ex. 1) at 2–26; (2) the Trauma-Informed Representation Project, which was funded by a $600,000 award from October 1, 2022, through September 30, 2025, Compl. ¶ 50; *see also* Compiled Award Documents at 27–50; (3) the LGBTQI+ Legal Access Project, which was funded by a $450,000 award from October 1, 2024, through September 30, 2027, Compl. ¶ 52; *see also* Compiled Award Documents at 51–74; (4) the LGBTQI+ Training for Coalitions Project, which was funded by a $400,000 award from October 1, 2024, through September 30, 2026,[1] Compl. ¶ 54; *see also* Compiled Award Documents at 75–98; (5) the Expanding Legal Services Initiative, which was funded by a $750,000 award from October 1, 2023, through September 20, 2026, Compl. ¶ 56; *see also* Compiled Award Documents at 99–121; and (6)–(7) two cooperative agreements that the Complaint does not

---

[1]    The Complaint contains a typographical error regarding the end date for this cooperative agreement.  *Compare* Compiled Award Documents at 76 (end date: September 30, 2026), *with* Compl. ¶ 54 (listing end date as September 30, 2027).

describe with particularity beyond that they ended on March 31, 2025, Compl. ¶ 57; *see also* Compiled Award Documents at 122–69.  Lorah Decl. ¶ 3.

On April 10, 2025, the Office sent a letter stating that these cooperative agreements were formally "terminated because a Department review of them has concluded that they 'no longer effectuate[ ] the . . . agency priorities.'"  Termination Ltr. (ECF No. 4-2) at 19 (alterations in original; quoting 2 C.F.R. § 200.340(a)(4)).  The Complaint alleges that this termination occurred the day after Deputy Attorney General Blanche issued a distinct memorandum pertaining to the official conduct of Department employees.  Compl. ¶ 9.  That memorandum did not purport to address, let alone require, the termination of any of Plaintiff's cooperative agreements.  *See id.* ¶ 9 n.1 (providing hyperlink to memorandum); *see also* Mem. from Deputy Att'y Gen. Blanche to All Dep't Emps. (Apr. 9, 2025), https://perma.cc/P6E7-B68K.

On April 23, 2025, Plaintiff filed the Complaint.  The Complaint brings six causes of action: (1) First Amendment (retaliation); (2) First Amendment (viewpoint discrimination); (3) First Amendment and Spending Power; (4) Fifth Amendment (equal protection); (5) Fifth Amendment (procedural due process); and (6) Administrative Procedure Act.  The Complaint seeks declaratory and injunctive relief "barring Defendants from enforcing or otherwise giving effect to the termination of" Plaintiff's cooperative agreements and "barring Defendants from re-obligating funds used to support [these] terminated" cooperative agreements.  Compl. at Prayer. The Complaint addresses solely Plaintiff's five active cooperative agreements with the Office.  *See generally* Compl.  Although the Complaint demands an order ensuring the "enforcement of closeout obligations," *id.* at Prayer, the Complaint does not identify any closeout obligations that Defendants have pertaining to the two concluded grants—let alone any closeout obligations that Defendants are at risk of not fulfilling.  Nor will Defendants fail to comply with any closeout

obligations for any of Plaintiff's seven cooperative agreements—whether for the two completed ones or the five others. *See* Lorah Decl. ¶ 5. The Complaint does not seek any relief pertaining to Deputy Attorney General Blanche's distinct memorandum. *See* Compl. at Prayer.

On April 24, 2025, Plaintiff moved for a temporary restraining order or, in the alternative, preliminary injunction (ECF No. 4). The Court held a status conference on the same date. Min Order (Apr. 24, 2025). The Court ordered Defendants to respond to Plaintiff's motion by May 2, with Plaintiff's reply brief due May 7, and a hearing scheduled for May 12, 2025. Min. Order (Apr. 25, 2025). Defendants have now moved to dismiss and opposed Plaintiff's motion for a temporary restraining order or, in the alternative, preliminary injunction.

## LEGAL STANDARDS

Federal courts "are courts of limited jurisdiction," and "[i]t is axiomatic that a court must have jurisdiction before it can hear any argument on the merits." *Keepseagle v. Vilsack*, 815 F.3d 28, 32, 36 (D.C. Cir. 2016) (citation omitted). Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A "facial" challenge to a court's jurisdiction, like the one Defendants bring here, "contests the legal sufficiency of the jurisdictional allegations contained in the complaint." *Am. Oversight v. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 152 (D.D.C. 2020). The court must accept such factual allegations as true and "construe 'the complaint in the light most favorable to the non-moving party.'" *Id.* (citation omitted). And if those allegations fail to establish that the court has jurisdiction, "dismissal is required as a matter of law." *Diaz v. Neighbors Consejo*, 77 F. Supp. 3d 227, 229 (D.D.C); *see also* Fed. R. Civ. P. 12(h)(3). "When reviewing a challenge pursuant to Rule 12(b)(1), the court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Sandoval v. Dep't of Just.*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018).

To withstand a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[N]or must [a] court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). Rather, a court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Under Rule 12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice," such as the compiled award documents attached as Exhibit 1. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also* Compl. ¶ 114 (purporting to rely on termination language in the awards to support Plaintiff's due process claim).

Injunctive relief, whether styled as a temporary restraining order ("TRO") or a preliminary injunction, "is an extraordinary remedy and should be granted sparingly." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 (D.D.C. 2020) (TRO); *see also Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (same for preliminary injunction). A motion for a TRO "is analyzed using the same 'factors applicable to preliminary injunctive relief,' and 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *4 (D.D.C. Feb. 17, 2025) (citation omitted). A party seeking a TRO or preliminary injunction thus "must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the issuance of a preliminary injunction is in the public interest."

*Id.* (quoting *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1324 (D.C. Cir. 2024)).  "[T]he movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation omitted).  And the requirement that a movant establish a likelihood of success on the merits includes the burden of "demonstrat[ing] a likelihood of success in establishing" a court's "jurisdiction."  *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020).

## ARGUMENT

I.    **The Court Lacks Jurisdiction Under the APA to Compel the Government to Pay Money Under a Contract.**

Plaintiff's APA claim (Count VI) should be dismissed at the threshold because, as the Supreme Court recently confirmed, this Court lacks jurisdiction under the APA "to enforce a contractual obligation to pay money" against the federal government.  *Dep't of Educ.*, 145 S. Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  And that jurisdictional principle applies with equal force to any such obligations created by the cooperative agreements at issue in this case.[2]

_____

[2]    Because the Court lacks jurisdiction over Plaintiff's APA claim, Local Civil Rule 7(n) does not apply.  *See, e.g.*, *Sharifymoghaddam v. Blinken*, Civ. A. No. 23-1472 (RCL), 2023 WL 8047007, at *2 (D.D.C. Nov. 17, 2023) ("The Court does not require an administrative record to determine whether these Defendants are able to redress the alleged harm to Plaintiffs.").  The production of an administrative record at this stage is unnecessary—Defendants seek dismissal not based on an administrative record, but instead based on the facts alleged in the Complaint and the jurisdictional arguments described above.  In all events, Defendants respectfully request that the Court relieve them of any purported obligation to comply with this rule.  *See Varghese v. Blinken*, Civ. A. No. 21-2597 (CRC), 2022 WL 3016741, at *2 n.3 (D.D.C. July 29, 2022) (explaining, in the related context of an agency inaction case, that Local Civil Rule 7(n) "does not apply" where "any administrative record would not help resolve the government's motion"); *see also Sharifymoghaddam*, 2023 WL 8047007, at *3 ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if "the administrative record is not necessary for the court's decision." (quoting *Eljalabi v. Blinken*, Civ. A. No. 21-1730 (RC), 2022 WL 2752613, at *3 n.3 (D.D.C. July 14, 2022))).

At the motion-to-dismiss stage, "[t]he plaintiff bears the burden of establishing" a court's "jurisdiction." *Am. Oversight*, 498 F. Supp. 3d at 152 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 603 (D.C. Cir. 2017) ("Before delving into the merits, we pause to assure ourselves of our jurisdiction, as is our duty."). For a plaintiff "bring[ing] a claim against the United States," carrying that jurisdictional burden requires "identify[ing] an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014); *see Perry Capital*, 864 F.3d at 619 (noting that sovereign immunity is "jurisdictional in nature"). Plaintiff here asserts a claim under the APA, *see* Compl. ¶¶ 118–26, which "provide[s] a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages' for persons 'adversely affected or aggrieved by agency action.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) (quoting 5 U.S.C. § 702). "But even for claims that are not for money damages, the APA confers no 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 67 (D.C. Cir. 2004) (quoting 5 U.S.C. § 702). This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). And here, Plaintiff's attempt to use the APA to compel the federal government to continue to provide funding for certain cooperative agreements pursuant to the terms of the awards is "impliedly forbid[den]," 5 U.S.C. § 702, by the Tucker Act.

The Tucker Act provides in relevant part that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . .

upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The D.C. Circuit has accordingly "interpreted the Tucker Act . . . to 'impliedly forbid[ ]' contract claims against the Government from being brought in district court under . . . the APA." *Perry Capital*, 864 F.3d at 618–19 (citing *Albrecht*, 357 F.3d at 67–68); *see Shaffer v. Veneman*, 325 F.3d 370, 373 (D.C. Cir. 2003) ("[T]his Court and others have interpreted the Tucker Act as providing the exclusive remedy for contract claims against the government, at least vis a vis the APA." (quoting *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)); *Crowley*, 38 F.4th at 1106. Thus, regardless of how a claim is styled, a district court lacks jurisdiction over that claim if it "is in 'its essence' contractual." *Perry Capital*, 864 F.3d at 619 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *see Albrecht*, 357 F.3d at 67 ("[T]he district court lacks jurisdiction if [the plaintiff's] claim is essentially a contract action."). And that jurisdictional barrier matters. It ensures that contract claims against the federal government are channeled into a court "that possesses expertise in questions of federal contracting law," *Alphapointe v. Dep't of Veterans Affs.*, 745 F. Supp. 3d 1, 11 (D.D.C. 2020), and it respects Congress's deliberate choice to limit the remedies available for such claims, *see Megapulse*, 672 F.2d at 971 (recognizing that a plaintiff "cannot maintain a contract action in either the district court or the Court of Claims seeking specific performance of a contract"); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985) ("[W]e must implement the congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes.").

Determining whether a claim "is 'at its essence' contractual"—and therefore falls outside of the APA's waiver of sovereign immunity—"depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 968). In examining the "source of the rights"

prong, the D.C. Circuit has "rejected the 'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act.'" *Id.* at 1107 (quoting *Megapulse*, 672 F.2d at 1107).  But the court has also warned that plaintiffs cannot avoid the Tucker Act and its jurisdictional consequences by artfully crafting a complaint to disguise what is essentially a contract claim as a claim for equitable relief under a separate legal authority.  *See id.*; *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see also Megapulse*, 672 F.2d at 969–70 ("This court retains the power to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds.").  A court must therefore consider, among other factors, whether "the plaintiff's asserted rights and the government's purported authority arise from statute"; whether "the plaintiff's rights 'exist[ ] prior to and apart from rights created under the contract'"; and whether "the plaintiff 'seek[s] to enforce any duty imposed upon' the government 'by the . . . relevant contracts to which' the government 'is a party.'"  *Crowley*, 38 F.4th at 1107 (citation omitted).

The second prong "considers 'the type of relief sought.'"  *Id.* (quoting *Megapulse*, 672 F.2d at 968).  Money damages and specific performance are "explicitly contractual remed[ies]," for instance.  *Perry Capital*, 864 F.3d at 619.  The D.C. Circuit has recently explained, moreover, that "[t]he crux of" this relief-focused inquiry "boils down to" whether the plaintiff, "in whole or in part, . . . explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government."  *Crowley*, 38 F.4th at 1107 (quoting *Kidwell*, 56 F.3d at 284).  Although a plaintiff does not necessarily seek monetary relief "merely because . . . success on the merits may obligate the United States to pay the complainant," as with the "source of the rights" prong, a plaintiff cannot avoid the Tucker Act's jurisdictional consequences by "converting" through creative

10

pleading what is essentially a claim for money damages into one "requesting injunctive relief or declaratory actions." *Kidwell*, 56 F.3d at 284. In assessing the type of relief a plaintiff seeks, a court must accordingly "look to the complaint's substance, not merely its form." *Id.* And a plaintiff's request for injunctive or declaratory relief is truly non-monetary only if that requested relief "has 'considerable value' independent of any future potential for monetary relief." *Id.*; *compare Tootle v. Sec'y of Navy*, 446 F.3d 167, 175–76 (D.C. Cir. 2006) (concluding that a plaintiff's request for injunctive relief was not a disguised claim for monetary relief because the injunctive relief sought had "non-negligible value" compared to any potential monetary recovery the plaintiff might have received), *with Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893–94 (D.C. Cir. 1985) (concluding that a plaintiff's claim was "one 'founded upon' a contract for purposes of the Tucker Act" in part because the plaintiff's request for an order "compelling the government to pay money owed . . . under an executory contract" was equivalent to the "classic contractual remedy of specific performance").

Applying the two-pronged test described in *Crowley* here confirms that Plaintiff's APA claim amounts to the very sort of contractual claim for monetary relief against the federal government over which this Court lacks jurisdiction. Plaintiff's claim—which is premised on a contract with the government—challenges the government's exercise of an express contractual right, and it seeks to compel the government to continue paying money pursuant to that contract; therefore, it belongs, under the Tucker Act, in the Court of Federal Claims.

Plaintiff has no colorable claim to the continuation of the cooperative agreements absent the underlying contracts. *See Navab-Sfavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 71 (D.D.C. 2009) ("[T]he APA itself does not 'confer a substantive right to be free from arbitrary agency action,' nor does it create any other substantive right that might be violated." (citation

omitted)).    And deciding whether the Office lawfully terminated the cooperative agreements pursuant to the termination clauses in the award instruments "turns entirely on the terms of" those contracts and principles of federal contracting law.   *Albrecht*, 357 F.3d at 69; *see also TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 344–45 (2024) (describing the legal standard for assessing whether the government's termination of a contract for convenience was improper).    In short, Plaintiff's asserted right to continuous funding "in no sense . . . exist[s] independently of" the cooperative agreement award instruments.   *Spectrum*, 764 F.2d at 894 (concluding that the plaintiff's claim against the federal government amounted to "a contract dispute" over which a district court lacked jurisdiction under the APA); *see Ingersoll-Rand*, 780 F.2d at 78 (explaining that "it [was] possible to conceive of" a government contractor's challenge to a termination decision "as entirely contained within the terms of the contract"); *Twin Metals Minn. LLC v. United States*, Civ. A. No. 22-2506 (CRC), 2023 WL 5748624, at *7 (D.D.C. Sept. 6, 2023) (finding a lack of subject-matter jurisdiction because the plaintiff "point[ed] to no other source of its asserted rights" beyond the lease agreements at issue).

The relief Plaintiff seeks, moreover, only bolsters the conclusion that the APA claim is essentially contractual in nature.   *See Crowley*, 38 F.4th at 1110 ("We turn next to 'the type of relief sought.'").    In the Complaint, Plaintiff asks the Court to "set the termination of the [cooperative agreements] aside," to "bar[ ] Defendants from enforcing or otherwise giving effect to the termination of" the cooperative  agreements, to "bar[ ] Defendants from re-obligating funds to support [the] terminated" cooperative agreements, to "[s]tay the termination of the" cooperative agreements, and to "direct[ ] Defendants to take all steps necessary to ensure that [the Department] disburses funds on [Plaintiff's cooperative agreements] in the customary manner and in customary timeframes."   Compl. at Prayer.   Plaintiff seeks, in other words, "an order compelling the

government to pay [it] money," *Spectrum*, 764 F.2d at 894, pursuant to the only legal instruments that would arguably entitle them to any funding at all—i.e., the cooperative agreements themselves. Such relief is indistinguishable from "the classic contractual remedy of specific performance," *id.*, confirming in turn that Plaintiff's claims "sound in contract," *Perry Capital*, 864 F.3d at 619; *see also id.* (observing that "specific performance is an explicitly contractual remedy"); *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.) ("The waiver of sovereign immunity in the [APA] does not run to actions seeking declaratory relief or specific performance in contract cases[.]").

Any lingering doubts as to whether this Court has jurisdiction to hear Plaintiff's contract-based claims have since been dispelled by the Supreme Court's recent order in *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam). In *Department of Education*, a district court had issued a TRO "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue," *id.* at 968, after that court concluded, in relevant part, that the plaintiff grant recipients were likely to succeed on their claim that the government's termination decision was arbitrary and capricious under the APA. *See California v. Dep't of Educ.*, Civ. A. No. 25-10548, 2025 WL 760825, at *3 (D. Mass. Mar. 10, 2025). The Supreme Court stayed the district court's TRO, however, after determining, among other things, that "the Government [was] likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Dep't of Educ.*, 145 S. Ct. at 968. More specifically, the Supreme Court explained that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court [had] ordered." *Id.* (quoting *Great-West Life*, 543 U.S. at 212). "Instead," according to the Supreme Court, "the

Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *Id.*

*Department of Education* further underscores that this Court lacks jurisdiction over Plaintiff's contract-based claims.  Like the *Department of Education* plaintiffs, Plaintiff here seeks relief from the termination of a government grant under which it received federal funding.  Like the *Department of Education* plaintiffs, Plaintiff challenges that grant-termination decision under the APA, including on the ground that the termination is arbitrary and capricious.  Compl. ¶¶ 118–26.  And like the district court in *Department of Education*, this Court too "lack[s] jurisdiction . . . under the APA" to compel Defendants "to pay money" pursuant to a contract, including the cooperative agreements.  *Dep't of Educ.*, 145 S. Ct. at 968.

This Court should accordingly dismiss Plaintiff's contract-based APA claim, which would be consistent with what other courts have done in similar cases involving government grants or contracts, in accordance with the Supreme Court's reasoning in *Department of Education*.  *See U.S. Conf. of Cath. Bishops v. Dep't of State*, Civ. A. No. 25-0465 (TNM), 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025) (denying a TRO motion after concluding that the court lacked the authority to "order the Government to pay money due on a contract"), *appeal docketed*, No. 25-5066 (D.C. Cir.); *Sols. in Hometown Connections v. Noem*, Civ. A. No. 25-0885, 2025 WL 1103253, at *8–10 (D. Md. Apr. 14, 2025) (denying the plaintiffs' TRO motion challenging the termination of certain U.S. Citizenship and Immigration Services grants in light of the Supreme Court's *Department of Education* order and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); *Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*, Civ. A. No. 25-30041, 2025 WL 1225481, at *1 (D. Mass Apr. 14, 2025) (dissolving a TRO after acknowledging that the *Department of*

*Education* order is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims"); *see also U.S. Conf. of Cath. Bishops*, 2025 U.S. App. LEXIS 8140, at *1 (denying plaintiff's motion for injunction pending appeal), *Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025) (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *Department of Education* order).

At bottom, when Plaintiff's claim here is "[s]tripped" of its APA embellishments and "equitable flair," Plaintiff's "requested relief seeks one thing": it "wants the Government to keep paying up" under the cooperative agreements. *U.S. Conf. of Cath. Bishops*, 2025 WL 763738, at *5. But because this Court lacks jurisdiction "to enforce" Defendants' "contractual obligation[s] to pay money," *Dep't of Educ.*, 145 S. Ct. at 968, or to otherwise resolve claims against the federal government that are "essentially" contractual, *Albrecht*, 357 F.3d at 68, Plaintiff's APA claim should be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

## II.    <u>Program Funding Decisions Are Committed to Office Discretion by Law.</u>

Even if the Court were to conclude that it has subject-matter jurisdiction over Plaintiff's APA claim, that challenge fails for a separate reason: such a decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review. 5 U.S.C. § 701(a)(2). In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Id.* at 191 (quoting 5 U.S.C. § 701(a)(2)). The *Lincoln* Court then held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-

15

sum appropriation," the Court explained, "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192. The Court accordingly concluded that the Indian Health Service's decision to discontinue a program that was (1) funded through the agency's yearly lump-sum appropriations from Congress (2) but not otherwise mandated or prescribed by statute was "committed to the [agency's] discretion" and thus "unreviewable" under the APA. *Id.* at 193–94.

That same principle from *Lincoln* applies to the cooperative agreements at issue in this case. Like all the Office's discretionary awards, Plaintiff's cooperative agreements are not prescribed by federal statute or regulation. Plaintiff does not allege that any such cooperative agreement is funded through targeted appropriations, as they were instead made through lump-sum appropriations that the Office receives from Congress. *See, e.g.*, 34 U.S.C. § 12291(b)(11); Consolidated Appropriations Act, 2024, Pub. L. No. 118-72, § 6, div. C, tit. II, 138 Stat. 25, 141–42 (appropriating funds for the Office's grants). As *Lincoln* made clear, the Office's "allocation of funds" from those lump-sum appropriations to various programs and priorities "requires 'a complicated balancing of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another," and "whether a particular program 'best fits the agency's overall policies.'" *Lincoln*, 508 U.S. at 193 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). For awards like these cooperative agreements, then, which are funded entirely out of such lump-sum appropriations, any decisions regarding how much funding to allocate to either award, or whether to fund either award at all, are committed to the Office's discretion. *See Lincoln*, 508 U.S. at 193–94; *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984) (Scalia, J.) ("A lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to distribute the funds

16

among some or all of the permissible objects as it sees fit.").  Defendants' "decision to discontinue" funding for those five awards is "accordingly unreviewable under § 701(a)(2)" of the APA. *Lincoln*, 508 U.S. at 193.

The D.C. Circuit has extended *Lincoln*'s reasoning to agency decisions involving specific appropriations as well.  *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 750–52 (D.C. Cir. 2002). Even if any of the cooperative agreements had been funded through such targeted appropriations, Plaintiff's APA claim could not survive.  Indisputably, no statute dictates the means by which any such funds should be disbursed, the precise timeline for such disbursements, or who should receive the funding or deliver the services.  That statutory silence thus indicates that Congress committed such programmatic decisions to the Office's discretion, meaning in turn that any such decisions regarding how the Office chooses to allocate its technical assistance funds, even if they had been specifically appropriated, would likewise be unreviewable under the APA.  *See id.* at 751 (explaining that an agency's implementation of a subsidy program for milk producers was unreviewable under § 701(a)(2) because the applicable appropriations statute "provide[d] no relevant 'statutory reference point' for the court" to assess the agency's "determination of the manner for providing assistance to dairy farmers").

## III.    Plaintiff Fails to State a Plausible Due Process Claim.

Plaintiff's due process claim (Count V), which is not addressed in Plaintiff's motion, likewise fails.  Plaintiff's due process claim is contractual in nature and does not belong in this court. *See Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*, Civ. A. No. 90-0482 (RCL), 1990 WL 134841, at *8–9 (D.D.C. Sept. 6, 1990) (quoting *Megapulse*, 672 F.2d at 967). The due process claim is nothing more than an attempt to enforce its rights under the cooperative agreements "through an alternative legal vehicle."  *Id.* at *8.  "Where the focus of the complaint is

17

on an alleged breach of contract . . . a plaintiff cannot avoid the Tucker Act's jurisdictional and remedial restrictions by recasting its claim as a constitutional due process claim." *Id.* at \*9; *see also Tucson Airport Auth. v. Gen. Dynamics Corp.*, 922 F. Supp. 273, 284 (D. Ariz. 1996) ("Constitutional claims based on rights arising from government contracts are 'within the Tucker Act and subject to its restrictions on relief.'" (quoting *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994))).  Inclusion of an allegation that the Office deprived the Plaintiff of due process is not enough to establish jurisdiction.  *See Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978) (declining to exercise federal question jurisdiction where aim of suit was to enforce agreements or receive money damages).

This dispute does not arise on "independent legal grounds" outside the cooperative agreements.  *See IngersollRand*, 780 F.2d at 78 (quoting *Megapulse*, 672 F.2d at 969–70).  Despite Plaintiff's efforts to repackage its APA claim into a due process claim, "this dispute [is] entirely contained within the terms of" the cooperative agreements.  *Id.*; *see also* Compl. ¶ 113 ("In particular, all five [Plaintiff] grants authorize [the Department] to terminate the award in only three circumstances[.]"); *id.* ¶ 114 ("By providing that the grants may not be terminated except for specified causes, the grant agreements give rise to property interests protected by the Due Process Clause.").  The claim that the Office violated due process "by refusing performance under [the cooperative agreements] is substantively indistinguishable from a breach of contract claim." *Suburban Mortg. Assocs., Inc. v. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007).  Plaintiff seeks to enforce its rights to money under the cooperative agreements and to prevent the Office from terminating them because Plaintiff's believe that the termination violates the terms of the cooperative agreement.  Compl. ¶ 114; *see also* Compiled Award Documents (Ex. 1) at 20, 43, 68, 91, 114 (Condition 32: termination or suspension).  Plaintiff cannot

constitutionalize this contract dispute. *See Nat'l Urb. League v. Trump*, Civ. A. No. 25-0471 (TJK), 2025 WL 1275613, at *17 (D.D.C. May 2, 2025) ("'[C]ourts have resisted' applying 'due-process principles to government contracts' outside 'the employment context.'" (quoting *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014))); *id.* at 39 ("A different rule would 'risk . . . transmogrifying virtually every dispute involving an alleged breach of contract by' the government 'into a constitutional case.'" (quoting *Redondo-Borges v. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005))).

Plaintiff's due process claim includes a passing reference to whether the "applicable regulation" permits the Department to terminate the cooperative agreements. Compl. ¶ 113. Plaintiff refers to 2 C.F.R. § 200.340(a). *Id.* ¶ 33. The particular provision states that: "[t]he Federal award may be terminated in part or its entirety as follows: . . . By the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). The regulation's "no longer effectuates the . . . agency priorities" language is the precise language cited in the termination letter. *Compare id.*, *with* Termination Ltr. (ECF No. 4-2) at 19 ("These seven awards are being terminated because a Department review of them has concluded that they 'no longer effectuate[ ] the . . . agency priorities.'" (alterations in original; quoting 2 C.F.R. § 200.340(a)(4))). As Plaintiff admits, "[u]nder this regulation, a change in agency priorities is not automatically a permissible basis for terminating a grant"; "[r]ather, the terms and conditions of the award itself must specify this ground as a basis for termination." Compl. ¶ 34. Thus, Plaintiff's reference to the applicable regulation, by Plaintiff's own admission, simply collapses into a dispute regarding the terms of the cooperative agreements themselves and whether the terms of the award documents permitted the termination. *Id.*; *see also id.* ¶ 124 ("But

the regulation permits terminating an award on that basis only if specifically permitted by the terms and conditions of the award.").

Some courts have expressed an unwillingness to dismiss due process claims under the Tucker Act due to perceptions regarding the Court of Federal Claims' ability to hear constitutional claims. These cases, however, misconstrue a general rule limiting that court's jurisdiction as a rule permitting no exception. *See, e.g.*, *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) ("The Court of Federal Claims *ordinarily* lacks jurisdiction over due process claims under the Tucker Act[.]" (emphasis added)); *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002) ("Our cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim unless it constitutes an illegal exaction."). When a plaintiff properly pleads a due process claim arguing that "money has been 'improperly . . . retained' by the government," the Court of Federal Claims has jurisdiction. *Casa de Cambio*, 291 F.3d at 1363 (quoting *United States v. Testan*, 424 U.S. 392, 401 (1976)). Plaintiff here alleges that, by terminating Plaintiff's contracts without complying with the contractual terms of their agreements, *see* Compl. ¶ 114, the Office is improperly retaining money that it had been promised pursuant to the terms of those cooperative agreements. That is precisely the type of contract-based claim for money damages that should be made, if at all, in the Court of Federal Claims. *See Casa de Cambio*, 291 F.3d at 1363. For all these reasons, "plaintiff cannot avoid the Tucker Act's jurisdictional and remedial restrictions by recasting its claim as a constitutional due process claim." *Olympic Fed. Sav.*, 1990 WL 134841, at *9.

IV.    <u>**Plaintiff Fails to State a Plausible First Amendment Claim.**</u>

Plaintiff separately alleges that Defendants' termination decision violates the First Amendment, as retaliation, Compl. ¶¶ 82–89, viewpoint discrimination, *id.* ¶¶ 90–98, or violation of the spending power, *id.* ¶¶ 99–102.

It is well settled that the federal government "can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Rust*, 500 U.S. at 193; *see also Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188–89 (2007) ("[I]t is well established that the government can make content-based distinctions when it subsidizes speech."). And it is equally well settled that the government does not run afoul of the First Amendment by electing not to fund certain activities, including ones that facilitate speech on issues of public importance. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (confirming that the government is "not required" by the First Amendment "to assist others in funding the expression of particular ideas, including political ones"); *cf. Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 549 (1983) ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right[.]"). Defendants do not violate Plaintiff's First Amendment rights merely "by declining to" further "subsidize" Plaintiff's alleged "First Amendment activities" with the Office's funding. *Regan*, 461 U.S. at 548; *see also Ysursa*, 555 U.S. at 355 (explaining that the First Amendment "does not confer an affirmative right to use government payroll mechanisms for the purpose of obtaining funds for expression"). The federal government need not subsidize Plaintiff with federal funding at all. *See Rust*, 500 U.S. at 193.

In declining to subsidize Plaintiff, the federal government in no way "discriminated on the basis of viewpoint." *Id.* Defendants' decision—assuming the veracity of Plaintiff's well-pled

factual allegations—not to subsidize Plaintiff's legal positions is equivalent to a restriction on federal funding for "abortion-related activities," *id.* at 178, or "lobbying," *Regan*, 461 U.S. at 546; *see also Kimberlin v. Dep't of Just.*, 318 F.3d 228, 229, 232–33 (D.C. Cir. 2003) (finding that a Bureau of Prisons regulation prohibiting inmates "from possessing electric or electronic musical instruments" did not violate the First Amendment because the Bureau had "simply chosen not to subsidize inmates' use or possession of a class of instruments requiring the expenditure of funds for electricity and care"); *Nat'l Urb. League*, 2025 WL 1275613, at *22 ("[B]ecause the provisions do not 'effectively prohibit[ ]' or otherwise restrict 'the recipient from engaging in the protected conduct outside the scope of the federal[ ] fund[s],' they do not 'place[ ]' a constitutionally problematic 'condition on the recipient of the subsidy.'" (emphasis omitted; quoting *Rust*, 500 U.S. at 197)).

Nor may Plaintiff invoke the unconstitutional conditions doctrine. The government "can, without offending the Constitution, selectively fund certain programs to address an issue of public concern, without funding alternative ways of addressing the same problem." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 217 (2013) (citing *Rust*, 500 U.S. at 173). The "government may place speech-restrictive conditions on participation in its programs if those conditions are confined to the scope of the program." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 336 (D.C. Cir. 2018). The termination decision—which is distinct from Deputy Attorney General Blanche's memorandum, which did not purport to terminate any of Plaintiff's grants[3]—is within those principles, and Plaintiff's theory risks transforming every

---

[3]    That memorandum provided guidance to all Department employees regarding their engagement with Plaintiff as part of their official duties or when their actions could be perceived as being taken on behalf of the Department. *See* Mem. from Deputy Att'y Gen. Blanche to All Dep't Emps. (Apr. 9, 2025), https://perma.cc/P6E7-B68K.

pause or suspension in the funding of grants or cooperative agreements on policy grounds into a First Amendment violation. *See Nat'l Urb. League*, 2025 WL 1275613, at *18 (citing *Redondo-Borges*, 421 F.3d at 10).

Thus, Plaintiff's First Amendment claim fails as a matter of law and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

## V.    **Plaintiff Fails to State a Plausible Equal Protection Claim.**

Plaintiff's equal protection claim, which is not addressed in Plaintiff's motion, similarly fails. The Fourteenth Amendment's equal protection guarantee, as applied to the federal government through the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), "requires [the government] to treat similarly situated persons alike," *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "The Constitution, however, 'does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Id.* (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *accord Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981). "Thus, the dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Women Prisoners*, 93 F.3d at 924 (internal quotation marks omitted).

The Complaint's bare allegation that "[c]ountless other similarly situated organizations have not been subject to the same, or even similar, sanctions," Compl. ¶ 107, is a legal conclusion (whether they are "similarly situated") that the Court should disregard under Rule 12(b)(6). *See Hettinga*, 677 F.3d at 476 ("[N]or must [a] court accept legal conclusions cast as factual allegations."). Stripped of that legal conclusion, the Complaint contains no factual allegations suggesting that Plaintiff has indeed been treated from similarly situated organizations—namely,

organizations that have cooperative agreements with the Office and that do not effectuate the Office's priorities. Accordingly, Plaintiff's equal protection claim fails.

## VI.    Plaintiff Has Failed to Carry Its Heavy Burden to Show Entitlement to a Preliminary Injunction.

"A preliminary injunction is an 'extraordinary and drastic remedy'" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A movant may be awarded such an "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To establish such entitlement, a movant must demonstrate that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20.

"The four factors have typically been evaluated on a 'sliding scale.'" *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291–92. Courts in this District have noted that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See, e.g.*, *Allied Progress v. CFPB*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017) (citing *Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015)). Several judges on the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). The D.C. Circuit, however, has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726

(D.C. Cir. 2022) ("We follow the same approach here because, even under the sliding-scale approach, the movant must raise at least a 'serious legal question on the merits.'" (quoting *Sherley*, 644 F.3d at 398)). In any event, this Court need not resolve the viability of the sliding-scale approach today since Plaintiff cannot meet its burden under the less demanding sliding-scale analysis.

The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019); *accord Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018). Plaintiff "bear[s] the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). As discussed more fully below, Plaintiff has failed to bear its burden.

## A.    Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Harm.

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)); *see also Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) ("It is clear beyond cavil that two of the prongs of the four-factor preliminary injunction test—likelihood of success and irreparable injury—are the most significant aspects of the court's inquiry because they relate directly to the purpose of a preliminary injunction."). To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up). In the context of a mandatory injunction, like the one sought here, Plaintiff "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief

or that extreme or very serious damage will result from the denial of the injunction." *Elec. Priv.*, 15 F. Supp. 3d at 39 (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).  Plaintiff has the burden to put forth sufficient evidence to satisfy this high standard.  "The movant cannot simply make 'broad conclusory statements' about the existence of harm.  Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'"  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).

A loss of funding, standing alone, constitutes the very sort of economic harm that is not considered irreparable for purposes of obtaining preliminary relief.  *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (per curiam) ("[I]t is 'well settled that economic loss does not, in and of itself, constitute irreparable harm[.]" (citation omitted)); *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327 F.2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable.").  Plaintiff attempts to identify a variety of non-economic harms that will allegedly flow from the termination of funding, including the elimination of certain services they deliver, staff layoffs, and interference with their respective organizational missions.  But Plaintiff fails to clearly show that those harms are "beyond remediation."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  Indeed, if Plaintiff were to "ultimately prevail" on the merits of its claims, it "can recover any wrongfully withheld funds through suit in an appropriate forum."  *Dep't of Educ.*, 145 S. Ct. at 969.  Plaintiff could then use those recovered funds to reinstate employees or provide any services that went undelivered in the interim.  *See Chaplaincy*, 454 F.3d at 297–98 ("The possibility that adequate compensatory or other corrective

relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm. (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  The Supreme Court concluded in its recent *Department of Education* decision that such a possibility for redress defeated the plaintiffs' assertions of irreparable harm in that case, *see Dep't of Educ.*, 145 S. Ct. at 969, and this Court should reach the same conclusion here.

Although Plaintiff attempts to argue that a First Amendment violation constitutes per se irreparable harm, "there is no per se rule that a violation of freedom of expression automatically constitutes irreparable harm." *Chaplaincy*, 454 F.3d at 301 (D.C. Cir. 2006); *see also Nat'l Treas. Emps. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (noting that despite the plaintiffs' alleged violation of the First Amendment's speech clause, there was no irreparable harm).  To the extent some cases contain language that seems to suggest that a First Amendment violation constitutes irreparable harm by itself, *see, e.g.*, *Singh v. Berger*, 56 F.4th 88, 109 (D.C. Cir. 2022), "[t]hat abstract principle must be applied to the relevant factual setting." *Getty Images News Servs. Corp. v. Dep't of Def.*, 193 F. Supp. 2d 112, 123 (D.D.C. 2002); *see also Chaplaincy*, 454 F.3d at 301.  In *Getty Images*, for instance, a media organization challenged its exclusion from Guantanamo Bay and sought to compel the Defense Department to establish a press pool at the base.  193 F. Supp. 2d at 114.  Although the Court found "a likelihood of success on [plaintiff's] claim that published equal access standards and more formal procedures are required, at least at some point in time," it refused to enter a preliminary injunction despite the claim's First Amendment basis when the media group failed to establish irreparable harm absent the requested injunction.  *Id.*  Plaintiff cannot simply bootstrap the merits of the First Amendment claims to their irreparable harm allegations.  In any event, each of Plaintiff's claims should be dismissed for the reasons stated above.

**B.    Plaintiff Has Not Shown a Likelihood of Success on the Merits.**

Plaintiff is also highly unlikely to succeed on the merits in this litigation.  As an initial matter, Defendants have argued above that Plaintiff's claims should in fact be dismissed.  But even if the Court were to deny Defendants' motion to dismiss in full or in part, that need not indicate that Plaintiff is substantially likely to succeed on the merits on a different standard of review.  *See Davis*, 571 F.3d at 1295 ("Because the pilots have failed to demonstrate either a substantial likelihood of success on the merits or irreparable harm, we affirm the district court's denial of a preliminary injunction.").  Plaintiff's argument for irreparable harm—which is limited to its First Amendment and APA claims, *see* Pl.'s Br. at 13–23—fails for all the reasons discussed above.

**C.    The Public Interest and Balance of Equities Warrant Denying Plaintiff's Motion.**

Along with alleged harm to the Plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiff would be in the public interest or harm nonlitigants.  *See Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001).  Here, a preliminary injunction would not be in the public interest and would harm nonlitigants.

The primary effect of granting a preliminary injunction would be to prevent the Office from re-obligating the funds at issue to an organization whose work better effectuates the Office's goals or priorities.  The need for a cooperative relationship between the government and the awardee is particularly substantial when it comes to cooperative agreements, such as those at issue here, where "substantial involvement is expected between the Federal agency and the recipient when carrying out the activity contemplated by the award." 2 C.F.R. § 182.620.  A positive, ongoing relationship between the parties is essential to a well-functioning cooperative agreement.  Any injunction would serve only to force two parties that—according to Plaintiff, *see* Compl. ¶¶ 60–63—do not see eye to eye, to have "substantial involvement" with one another while they carry out the activity

28

contemplated by the awards.  *See* 2 C.F.R. § 182.620.  Meanwhile, other potential grantees would be frozen out from obtaining this "extremely competitive" funding.  *See* Compl. ¶ 24.

As for Defendants, a TRO or preliminary injunction would directly undermine Defendants' contractual rights, as well as the consistency and predictability that contract law is meant to foster. Such relief would also interfere with the Executive Branch's ability to lawfully direct and guide agencies' spending decisions and, more broadly, to protect the public fisc.  Indeed, the Supreme Court determined that a stay of the district court TRO at issue in the recent *Department of Education* decision was warranted.  *Dep't of Educ.*, 145 S. Ct. at 968–69 (concluding that the "remaining stay factors" favor the government).  The majority rejected the dissent's conclusion that "the balance of the equities clearly" tips in favor of "reinstating the grant terminations."  *See id.* at 977 (Jackson, J., dissenting).  Defendants respectfully submit that this Court should follow the guidance set forth by the majority of the Supreme Court.  Even if Plaintiff were to demonstrate irreparable harm and a likelihood of success on the merits, the balance of equities tips against injunctive relief.

## VII.   Any Relief Should Be Limited in Scope.

For the reasons explained above, Plaintiff is not entitled to any preliminary relief.  But in the event the Court concludes otherwise, it is well settled that injunctive relief "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. U.S. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[ ]," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).  In light of these principles, any preliminary relief the Court grants should be limited in at least three respects.

First, the scope of any preliminary relief should be limited to the particular cooperative agreements that remain ongoing, as opposed to the two closed cooperative agreements. Plaintiff has not alleged, let alone plausibly alleged, that Defendants are failing to comply with any closeout obligations pertaining to those two closed cooperative agreements, *see generally* Compl., and Defendants have provided an express assurance that they will continue to comply with their closeout obligations under those award documents. *See* Lorah Decl. ¶ 5.

Second, any ensuing order should not purport to require Defendants to renew any cooperative agreements once their periods of performance conclude. Plaintiff has not alleged and cannot allege that they have a right to have their cooperative agreements continued past their end dates. In no event should the Court limit Defendants' authority to solicit applications to enter into similar cooperative agreements with other entities in the ordinary course. As Plaintiff recognizes, the Office has an "extremely competitive" "open application process," Compl. ¶ 24, and the Court should not restrict the Office from complying with its standard operating procedures regarding that process. *See, e.g.*, OVW, *FY 2025 Application Companion Guide*, https://www.justice.gov/ovw/fy-2025-application-companion-guide (last updated Mar. 21, 2025).

Indeed, the scope of injunctive relief that the Court can grant here is limited by separation of powers principles. The Court cannot "specifically order" the federal government "to continue to contract" with specific parties, as such relief would undermine the "Executive discretion" that "both the Constitution and Congress's laws have traditionally afforded" with respect to "how to spend" appropriated funds "within the constraints set by Congress." *AIDS Vaccine Advocacy Coal. v. Dep't of State*, Civ. A. No. 25-0400 (AHA), 2025 WL 752378, at *23 (D.D.C. Mar. 10, 2025), *appeal docketed*, No. 25-5098 (D.C. Cir.). "The relief" that Plaintiff seeks here—namely,

"reinstatement of contracts terminated by the Government"—is "beyond the power of this Court." *U.S. Conf. of Cath. Bishops*, 2025 WL 763738, at \*7.

Third, and relatedly, any ensuing order should not purport to prevent Defendants from terminating Plaintiff's cooperative agreements for any other reason. *See AIDS Vaccine*, 2025 WL 752378, at \*23. The award instruments include termination provisions that Defendants must be permitted to avail themselves of, circumstances permitting. *See* Compiled Award Documents (Ex. 1) at 20, 43, 68, 91, 114 (Condition 32: termination or suspension). The Court should not effectively rewrite these award documents in Plaintiff's favor.

## VIII.    The Court Should, at Minimum, Require a Bond.

Finally, the Court should order security with any preliminary relief it grants. Under Rule 65(c), the Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This Rule provides "broad discretion in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). Should the Court issue an injunction at this preliminary stage requiring Defendants to continue to pay Plaintiff millions of dollars under the cooperative agreements, Defendants request that Plaintiff be ordered to post a bond that is equivalent to the remaining balance on the operative agreements. *See Dep't of Educ.*, 145 S. Ct. at 969 (noting when discussing the harm the government would face from the continued disbursement of terminated grant funds that "the District Court declined to impose bond"). The remaining amounts of unobligated funds total $2,046,034.42. Lorah Decl. ¶ 4. This is not a particularly high amount for an organization with assets of $360,966,000, including more than $270 million in investments and in fact, as of the most recent reporting, more cash on hand than

the requested bond amount. *See* Am. Bar Ass'n, *Consolidated Financial Statements and Report of Independent Certified Public Accountants, August 31, 2024, and 2023*, https://www.americanbar.org/content/dam/aba/administrative/aba/aba_financials/fy2024-aba-audited-financial-statements.pdf (last accessed May 2, 2025); *see also* Hrg. Tr. (ECF No. 13) at 6:9–17 (noting that "the ABA is obviously a much larger organization"). Accordingly, if the Court enters an injunction, it should require the posting of a $2,046,034.42 bond.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and deny Plaintiff's motion for a temporary restraining order or, in the alternative, preliminary injunction.

Dated: May 2, 2025                     Respectfully submitted,
     Washington, DC

                                         EDWARD R. MARTIN, JR., D.C. Bar #481866
                                         United States Attorney

                                  By:       */s/ Douglas C. Dreier*
                                         DOUGLAS C. DREIER, D.C. Bar #1020234
                                       Assistant United States Attorney
                                       601 D Street, NW
                                       Washington, DC 20530
                                       (202) 252-2551

                                       *Attorneys for the United States of America*