IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE *et al.*,<br><br>*Defendants*. | Case No. 25-cv-1263 |

**DECLARATION OF VLADIMIR GURIN**

I, Vladimir Gurin, declare as follows:

1. I am the Director of D.C. Finance at the American Bar Association (ABA). In that role, I oversee the ABA's grant compliance, the preparation of grant proposals and budgets, review of grant spending, and the analysis of grant award balances at regular intervals, among other responsibilities.

2. I have personal knowledge of the facts and information in this declaration. I respectfully provide this declaration to explain how the ABA obtains funds from its grant awards and to explain what has occurred since the termination of grants from the U.S. Department of Justice's (DOJ) Office on Violence against Women (OVW) to the ABA's Commission on Domestic & Sexual Violence.

3. For its DOJ grant awards, the ABA does not receive money in advance; rather, it spends the funds and then seeks reimbursement after the fact.

4. At the beginning of each grant award, the ABA provides a submission to DOJ that describes—in greater detail than the initial grant proposal—the project activities planned and includes a detailed proposed budget. DOJ reviews that budget, requests any changes that may be required, and then approves the budget. The approved budget then guides the ABA's spending on the relevant grant throughout the performance period.

5. If the ABA's spending in any particular budget category deviates more than 10% from the total amount in the approved budget, the ABA must submit a budget modification accounting for that difference, by adjusting the budget for other categories accordingly. It will also submit a budget modification if it wants to modify the work plan or costs or to extend the performance period (known as a "no-cost extension"). The budget modification then undergoes the same DOJ approval process as the original budget.

6. After ABA submits the draw down request for reimbursement of costs incurred on a grant, DOJ usually approves that request within one business day in ASAP.gov and deposits the funds in the ABA's bank account.

7. The ABA seeks reimbursement for the costs incurred on a monthly basis via draw downs, immediately after closing the books for the previous month. All of its DOJ grants are on the same schedule.

8. Last month, the ABA was able to draw down funds on its DOJ grants as usual on April 9. The ABA had submitted its requests based on the March books when they closed. That same day, DOJ approved the requests, so the ABA was then able to draw down the funds.

9. The ABA's payment request includes not only its own expenditures, but also expenditures of its grant partners, as approved by DOJ as part of the grant award. The ABA's partners submit their project expenses to the ABA which after being processed the ABA includes those expenditures in the draw down requests. Also, it can take time for the ABA to receive all of its partners' project expenses. As a result, not all expenditures incurred for the ABA's grants in March (or even earlier) have been processed at this time.

10. The April drawdown included the Commission's payroll through March 21, as the Commission pays its staff on a biweekly basis. Payroll for the remainder of March and the beginning of April would be included in the May drawdown.

11. On or about April 17, and again on April 24, the ABA checked the system in which we submit requests and draw down funds, and it got the following error message: "No account found matching criteria." The ABA draws down funds from two different accounts in the system, and it received this error message with respect to both accounts.

12. The next drawdown should be around May 11, after the April general ledger is closed. If the ABA's account is not restored in the system before then, it will not be able to draw

down funds for reimbursement of expenses incurred prior to the termination of the ABA's grants and for costs necessarily incurred during the prescribed closeout period.

13. At the end of the performance period for a grant award, the grant enters the closeout period. During that time, the ABA gathers and submits final expenses for reimbursement, including from its partners. It also typically submits a report for each grant explaining what it accomplished during the award's performance period.

14. The notice of termination of all of the ABA's grants from DOJ instructed the ABA to comply with its closeout obligations for those grants. Those obligations include preparing and submitting the grant reports; terminating agreements with vendors, consultants, and partners; and submitting its remaining reimbursement requests for project and closeout expenses, within up to 120 days after the grants' end date.

15. The total remaining, unpaid obligation for all OVW awards to the ABA is $2.2 million.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of May 2025 in Washington, D.C.

*Vladimir Gurin*
VLADIMIR GURIN