UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>       Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE, et al.,<br><br>      Defendants. | Civil Action No. 25-1263 (CRC) |

**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    The Court Should Not Ignore the Supreme Court's or D.C. Circuit's Recent Decisions... 2

    II.   This Action Is Barred by the Tucker Act. .......................................................... 5

    III.  Program Funding Decisions Are Committed to Agency Discretion by Law. ................... 8

    IV.  Defendants' First Amendment Argument Clearly Applied to Each of Plaintiff's First
    Amendment Claims. ..................................................................................... 11

    V.   Plaintiff's Arguments Pertaining to Its Due Process Claim Fail. ..................................... 15

    VI.  Plaintiff's Arguments Pertaining to Its Equal Protection Claim Fails. ............................ 17

    VII. Plaintiff's Opposition Does Not Dispute (1) That Plaintiff Has No Viable Claim
    Pertaining to the Purported Termination of the Two Previously Concluded Cooperative
    Agreements, (2) That Plaintiff Does Not Have a Right to Compel the Office to Continue the
    Cooperative Agreements Past Their Terms; or (3) That the Office Should Be Permitted to
    Terminate the Cooperative Agreements for Any Reason Listed in Condition 32. .................. 17

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Agency of Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
    570 U.S. 205 (2013) ........................................................................................................ 14

*Albrecht v. Comm. on Emp. Benefits,*
    357 F.3d 62 (D.C. Cir. 2004) ........................................................................................ 5

*Am. Ass'n of Colls. for Tchr. Educ. v. McMahon,*
    Civ. A. No. 25-0702, 2025 WL 890560 (D. Md. Mar. 21, 2025) ......................... 10

*Am. Ass'n of Colls. for Tchr. Educ. v. McMahon,*
    No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) .................................... 10

\* *Dep't of Educ. v. California*
    145 S. Ct. 966 (2025)....................................................................................................... 1, 2

*Harris v. Bessent,*
    Civ. A. No. 25-0412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025) .................... 4

*Harris v. Bessent,*
    Nos. 25-5037, 25-5057, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) .................... 5

*Harris v. Bessent,*
    Nos. 25-5037, 25-5057, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (en banc) .................... 5

*Holley v. United States,*
    124 F.3d 1462 (Fed. Cir. 1997) ...................................................................... 12, 13

*Hymas v. United States,*
    810 F.3d 1312 (Fed. Cir. 2016) ...................................................................... 6

\* *Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ............................................ 3, 4, 7, 8, 10, 11, 15

*Klingenschmitt v. United States,*
    119 Fed. Cl. 163 (2014) ................................................................................ 12

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ...................................................................................... 8, 9

*Lummi Tribe of the Lummi Rsrv. v. United States,*
    870 F.3d 1313 (Fed. Cir. 2017) ................................................................... 16, 17

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ..................................................................... 7

*Nat'l Urb. League v. Trump,*
    Civ. A. No. 25-0471 (TJK), 2025 WL 1275613 (D.D.C. May 2, 2025) ............. 13

*Perry Cap. LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ...................................................................... 15

*Pol'y & Rsch., LLC v. Dep't of Health & Hum. Servs.*,
   313 F. Supp. 3d 62 (D.D.C. 2018) ................................................................. 10

*Redondo-Borges v. Dep't of Hous. & Urb. Dev.*,
   421 F.3d 1 (1st Cir. 2005) ............................................................................... 14

*Regan v. Taxation with Representation of Wash.*,
   461 U.S. 540 (1983) ........................................................................................ 13

*Rust v. Sullivan*,
   500 U.S. 173 (1991) .................................................................................. 12, 13

*Sharp v. Weinberger*,
   798 F.2d 1521 (D.C. Cir. 1986) ................................................................ 15, 16

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
   967 F.2d 598 (D.C. Cir. 1992) ............................................................. 5, 6, 15

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
   Civ. A. No. 25-0465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025) ........... 6, 7

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
   No. 25-5066, 2025 U.S. App. LEXIS 8140 (D.C. Cir. Mar. 28, 2025) ................ 6

\* *Widakuswara v. Lake*,
   Nos. 25-5144, et al., 2025 WL 1288817 (D.C. Cir. May 3, 2025) ............. 1, 2, 6, 8, 12, 15, 18

*Wilcox v. Trump*,
   Civ. A. No. 25-0334 (BAH), 2025 WL 720914 (D.D.C. Mar. 6, 2025) ............. 4-5

*Ysursa v. Pocatello Educ. Ass'n*,
   555 U.S. 353 (2009) ........................................................................................ 13

**Statutes**

5 U.S.C. § 701 ............................................................................................................ 8

22 U.S.C. § 6204 ................................................................................................... 2, 3

22 U.S.C. § 7631 ...................................................................................................... 14

28 U.S.C. § 1491 ................................................................................................... 1, 6

34 U.S.C. § 12291 ...................................................................................................... 9

37 U.S.C. § 204 ........................................................................................................ 13

**Regulations**

2 C.F.R. § 200.340 ................................................................................................ 9, 10

45 C.F.R. § 75.372 ................................................................................................................. 10

Defendants, the Department of Justice (the "Department"), Attorney General Pamela J. Bondi, and Deputy Attorney General Todd Blanche, respectfully submit this reply in further support of their motion to dismiss (ECF No. 16).

## INTRODUCTION

Defendants moved to dismiss this action, asking the Court to dismiss this action because it was filed in the wrong court and because Plaintiff fails to state a claim.  In recent weeks, both the Supreme Court in *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (decided April 4, 2025), and the D.C. Circuit in *Widakuswara v. Lake*, Nos. 25-5144, 25-5145, 25-5150, 25-5151, 2025 WL 1288817 (D.C. Cir. May 3, 2025) (per curiam) (decided Saturday), *further proceedings* (D.C. Cir. May 7, 2025) (en banc), considered and rejected claims similar to those presented by Plaintiff because the Tucker Act, 28 U.S.C. § 1491, vests exclusive jurisdiction for claims that are in essence contractual in the Court of Federal Claims.  Plaintiff offers no adequate reason to distinguish either case.  Pl.'s Opp'n (ECF No. 24) at 18.  Plaintiff instead encourages this Court to ignore these recent precedents, inviting further protracted proceedings and appeals in the wrong forum. *Id.*  All the while, Plaintiff refuses to go to the correct court where it may litigate the termination of its award documents, with the Court of Federal Claims well-positioned to assess whether the Department's Office on Violence Against Women ("Office" or "OVW") breached Condition 32 (termination or suspension).  *See* Compiled Award Documents (ECF No. 16-3) at 20, 43, 68, 91, 114.  The Court should not bless Plaintiff's attempt to end-run around the Tucker Act's jurisdictional requirements, and it should instead dismiss this action, which in any event fails to state a claim upon which relief may be granted.

## ARGUMENT

**I.      The Court Should Not Ignore the Supreme Court's or D.C. Circuit's Recent Decisions.**

The Tucker Act requires this case to be brought, if at all, in the Court of Federal Claims ("CFC").  As the D.C. Circuit explained on Saturday, "[t]he Supreme Court recently applied these principles to issue a stay pending appeal in a case substantially similar to this one." *Widakuswara*, 2025 WL 1288817, at *3.  "In *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), a district court entered an order 'enjoining the Government from terminating various education-related grants.'" *Widakuswara*, 2025 WL 1288817, at *3 (quoting *Dep't of Educ.*, 145 S. Ct. at 968).  "The Supreme Court stayed the order pending the disposition of an appeal to the First Circuit and any ensuing petition for certiorari." *Id.*  "The Court concluded that the district court likely lacked jurisdiction to bar termination of the grants, because the Tucker Act likely conferred jurisdiction over the dispute on the CFC." *Id.*  "Therefore, 'the [Administrative Procedure Act's ("APA")] limited waiver of immunity d[id] not extend' to the injunction at issue, which the Court described as an 'order[ ] to enforce a contractual obligation to pay money.'" *Id.* (quoting *Dep't of Educ.*, 145 S. Ct. at 968).

On Saturday, the D.C. Circuit was presented with an appeal of injunctions that, inter alia, "terminated [Radio Free Asia's ('RFA')] and [Middle East Broadcasting Networks' ('MBN')] grant agreements for the 2025 fiscal year." *Id.* at *1.  After reviewing the Supreme Court's decision from less than a month before, the D.C. Circuit confirmed that *Department of Education*'s "reasoning controls this case." *Id.* at *3.  "Congress created a contractual scheme for allocating funds to the grantees" and authorized the U.S. Agency for Global Media ("USAGM") "to fund RFA, MBN, and other networks through 'grants and cooperative agreements.'" *Id.* (quoting 22 U.S.C. § 6204(a)(5).  RFN and MBN entered into those grants and cooperative agreements

with USAGM, thereby executing contracts with the government. *Id.* These award documents "constitute government contracts for Tucker Act purposes." *Id.*

As the D.C. Circuit explained, "the dispute here arose when USAGM terminated these agreements." *Id.* at *4. Plaintiffs there, like here, asserted various claims under the APA and the Constitution in an effort to rescind USAGM's termination, which they consider unlawful. *See id.* at *5 ("Below, plaintiffs raised mandamus, impoundment, Presentment Clause, Appropriations Clause, Spending Clause, Take Care Clause, Separation-of-Powers, and *ultra vires* claims," as well as APA claims.). But regardless of the specific claim brought by the plaintiffs, the issue for plaintiffs was that the relief they sought, like here, was the rescission of the termination of the award documents: "Whether phrased as a declaration that the agreements remain in force, or an order to pay the money committed by those agreements, the injunction in substance orders specific performance of the grant agreements—a quintessentially contractual remedy." *Id.* at *4. "And it is the inherently contractual nature of the relief afforded—*not* any characterization of the relief as money damages—that makes the CFC the exclusive forum for this suit." *Id.* (emphasis in original).

The D.C. Circuit further rejected the notion that requiring litigation in the Court of Federal Claims would impermissibly "deprive [plaintiffs] of meaningful judicial review of their constitutional claims." *Id.* at *5. The "Tucker Act governs challenge[s] to contract termination[s], 'despite plaintiff's allegations of statutory and constitutional violations.'" *Id.* (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985)). The D.C. Circuit did not distinguish between any of the plaintiffs' particular constitutional claims; rather, all "allegations of statutory and constitutional violations" regarding the termination of government contracts must be funneled through the Court of Federal Claims. *Id.*

Here, Plaintiff's only response to *Widakuswara* is that "the court was not presented with the arguments that [Plaintiff] makes here." Pl.'s Opp'n at 18. But Plaintiff offers no support for that assertion. *See* RFA's & MBN's Opp'n to Mot. for Stay, *Radio Free Asia v. United States*, Nos. 25-5150, 25-5151 (D.C. Cir. Apr. 28, 2025), Doc. No. 2113213. In *Widakuswara*, like here, the plaintiffs argued that the Court should or did "enjoin[ ] the Government to return to the status quo preceding the unlawful [ ] termination, without 'purport[ing] to state what amount of money, if any, was owed.'" *Id.* at 23 n.5. There, like here, the plaintiffs argued that their claims "exist prior to and apart from rights created under their contracts." *Id.* at 24 (cleaned up). In fact, the entire first argument section of the *Widakuswara* plaintiffs' likelihood of success discussion is largely duplicative of Plaintiff's lead argument here. *See id.* at 19–26. To the extent there is any difference, it is because Plaintiff's claim here is even weaker than that presented in *Widakuswara*, as Plaintiff cannot raise RFA's and MBN's second argument regarding USAGM purportedly "violating Congress's statutory command," *id.* at 26–28, since Plaintiff has no similar statutory argument here.

On May 7, 2025, the D.C. Circuit, sitting en banc, stayed Saturday's decision in *Widakuswara*. Crucially, the en banc court confirmed that "[t]he purpose of this administrative stay is to give the court sufficient opportunity to consider the emergency petitions and should not be construed in any way as a ruling on the merits of those petitions." Order at 2. Judges Henderson, Katsas, Rao, and Walker dissented from the en banc order. In the interim, further proceedings will occur—such as perhaps the government requesting and obtaining relief from the Supreme Court, or perhaps the en banc D.C. Circuit lifting its administrative stay. Not for the first time in recent weeks, the ground is rapidly shifting. *See, e.g.*, *Harris v. Bessent*, Civ. A. No. 25-0412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025), and *Wilcox v. Trump*, Civ. A.

No. 25-0334 (BAH), 2025 WL 720914 (D.D.C. Mar. 6, 2025), *collectively stayed*, *Harris v. Bessent*, Nos. 25-5037, 25-5057, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025), *lifting stay*, *Harris v. Bessent*, Nos. 25-5037, 25-5057, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (en banc), *collectively stayed*, *Wilcox v. Trump*, No. 24A966 (U.S. Apr. 9, 2025).  But whatever the ultimate outcome in *Widakuswara*, the Court certainly should not grant Plaintiff's motion for injunctive relief absent further clarity.

At minimum, as Defendants have previously confirmed, "the challenged grant funds at issue in this case will not be reobligated or disbursed to any person or entity other than Plaintiff before June 2, 2025," thereby lessening any time pressure from this case.  Defs.' Notice (ECF No. 10) at 1.  In fact, given the procedure for the Office's grant funding application process, *see* OVW, *FY 2025 Application Companion Guide*, https://www.justice.gov/ovw/fy-2025-application-companion-guide (last accessed May 8, 2025), there is no likelihood that any such funds would be re-obligated before September 30, 2025.

## II.    This Action Is Barred by the Tucker Act.

Plaintiff shows its hand when it states that it is reserving the right to argue for the overturning of prior precedent and assert that the Tucker Act should not be read to impliedly forbid district courts from considering contract actions for specific relief.  Pl.'s Opp'n at 11 n.2.  The D.C. Circuit has long "held that the Tucker Act 'impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not.'"  *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004) (quoting *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)).  Accordingly, precedent already confirms that the Tucker Act impliedly forbids claims pertaining to government contracts even when the Court of Federal Claims is not

permitted to award the relief requested.  *Id.*; *see also Widakuswara*, 2025 WL 1288817, at *5 (rejecting "argu[ment] that 'serious constitutional question[s]' would arise if we concluded that the CFC had exclusive jurisdiction, as that would deprive them of meaningful judicial review of their constitutional claims").

Plaintiff's primary argument is instead that cooperative agreements are in some sense not subject to the Tucker Act terms.  Pl.'s Opp'n at 12–15.  But the Tucker Act applies to "any express or implied contract with the United States," making no distinction between grants and cooperative agreements.   28 U.S.C. § 1491(a)(1).   It is 28 U.S.C. § 1491(b)(1), not § 1491(a)(1), that distinguishes between cooperative agreements and "procurement solicitations and contracts," and it is § 1491(a)(1) that is invoked here; in contrast, § 1491(b)(1) concerns jurisdiction of "[b]oth the Unite[d] States Court of Federal Claims and the district courts of the United States."  28 U.S.C. § 1491(b)(1); *see also Hymas v. United States*, 810 F.3d 1312, 1329–30 (Fed. Cir. 2016) (describing the jurisdictional complication for cooperative agreements under § 1491(b)(1)).  That is why the D.C. Circuit refused to enjoin the government from terminating cooperative agreements in another recent case, *U.S. Conf. of Cath. Bishops v. Dep't of State*, No. 25-5066, 2025 U.S. App. LEXIS 8140, at *1 (D.C. Cir. Mar. 28, 2025).  That case, like here, involved multiple canceled cooperative agreements.   *U.S. Conf. of Cath. Bishops v. Dep't of State*, Civ. A. No. 25-0465 (TNM), 2025 WL 763738, at *2 (D.D.C. Mar. 11, 2025).  In that case, like here, "[t]he justification behind the termination was simple: the agreements 'no longer effectuate[d] agency priorities.'" *Id.* at *3 (quoting Termination Ltrs.).  And in that case, like here, because the relief requested "is 'founded upon a contract for purposes of the Tucker Act,'" the lawsuit "thus must be heard in Claims Court."  *Id.* at *7; *see also id.* at *8 (""[T]o allow suit against the United States under the APA in actions actually based on contract would create such inroads into the restrictions of the

Tucker Act that it would ultimately result in the demise of the Court of Claims'—and, accordingly, an abrogation of congressional prerogative and will.  This Court is but a creature of the trifurcated structure of its Constitution.  It is perhaps when emotions are at their zenith that the imperative to police jurisdictional bounds carries the most importance." (citation omitted; quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982))).

Plaintiff objects that it may not be entitled to all the remedies it seeks here in the Court of Federal Claims.  Pl.'s Opp'n at 14–15.  But "[r]egardless of the precise remedial powers of the Claims Court, the Circuit signaled that government contractors seeking specific performance must go there."  *U.S. Conf. of Cath. Bishops*, 2025 WL 763738, at *7 n.6 (citing *Ingersoll-Rand*, 780 F.2d at 80).  Even if Plaintiff "would prefer to avoid becoming subject to the jurisdiction of the Claims Court because there its remedies could not include specific performance," Plaintiff cannot "avoid[ ] this remedy restriction," as "a complaint involving a request for specific performance must be resolved by the Claims Court."  *Ingersoll-Rand*, 780 F.2d at 80.

Plaintiff also asks this Court to interpret whether its contractual award documents (ECF No. 16-1) would allow for an award of money damages if this case were brought in the Court of Federal Claims.  *See* Pl.'s Opp'n at 14 ("[T]hese cooperative agreements provide no affirmative indication that money damages are available in the event of the government's breach.  No provision of the agreements provides for damages.").  Plaintiff's demand—that the Court interpret the meaning of its contracts to determine whether they permitted the Office's termination or whether they permit money damages against the government—reflects the fundamental problem with its Complaint: "Congress has established . . . a scheme for the resolution of contract disputes," *Ingersoll-Rand*, 780 F.2d at 80, which Plaintiff seeks to circumvent.  Whether the award documents allow for a claim of money damages against the federal government is a decision that

must be made in the Court of Federal Claims, and to allow Plaintiff to litigate here whether the termination of the award was proper pursuant to the contractual terms "would intolerably upset the congressional purpose underlying the Act." *Id.*

As for Plaintiff's argument that its APA and constitutional claims are not in essence contractual, Plaintiff cannot avoid the Complaint's prayer for relief, the entirety of which seeks to rescind the termination of the cooperative agreements, whether on APA grounds, First Amendment grounds, due process grounds, or equal protection grounds. Compl. at Prayer. As the D.C. Circuit has explained, "it is the inherently contractual nature of the relief afforded—*not* any characterization of the relief as money damages—that makes the CFC the exclusive forum for this suit." *Widakuswara*, 2025 WL 1288817, at *4 (emphasis in original; citing *Ingersoll-Rand*, 780 F.2d at 79–80). Undoing a purportedly improper termination of a contract is "a quintessentially contractual remedy." *Id.*

## III.    Program Funding Decisions Are Committed to Agency Discretion by Law.

Even if the Court were to conclude that it has subject-matter jurisdiction, Plaintiff's APA challenge fails for a separate reason: such a decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review. 5 U.S.C. § 701(a)(2). Plaintiff offers no persuasive rebuttal to *Lincoln v. Vigil*, 508 U.S. 182 (1993). *See* Pl.'s Opp'n at 18–20. The *Lincoln* Court held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation," the Court explained, "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." 508 U.S. at 192. The Court accordingly concluded that the Indian Health Service's decision to discontinue a

program that was (1) funded through the agency's yearly lump-sum appropriations from Congress (2) but not otherwise mandated or prescribed by statute was "committed to the [agency's] discretion" and thus "unreviewable" under the APA. *Id.* at 193–94.

Plaintiff does not dispute that, like all the Office's discretionary awards, Plaintiff's cooperative agreements are not prescribed by federal statute or regulation. Plaintiff does not dispute that the awards were issued from lump-sum appropriations that the Office receives from Congress. *See, e.g.*, 34 U.S.C. § 12291(b)(11); Consolidated Appropriations Act, 2024, Pub. L. No. 118-72, § 6, div. C, tit. II, 138 Stat. 25, 141–42 (appropriating funds for the Office's grants). Plaintiff's sole argument instead is that certain "regulatory parameters not only cabin DOJ's actions but also provide this Court with meaningful standards for evaluating those actions, making them subject to judicial review." Pl.'s Opp'n at 19.

Plaintiff is once again mistaken. The regulation Plaintiff relies upon, 2 C.F.R. § 200.340(a)(4)—which is explicitly cited in the termination letter, *see* Termination Ltr. (ECF No. 4-2) at 19 (citing 2 C.F.R. § 200.340(a)(4))—does not, according to Plaintiff, provide any sort of independent standard, but rather folds right back into the termination provision in the contractual documents. *See* Pl.'s Opp'n at 19 ("A change in agency priorities is a permissible basis for terminating a grant only if the terms and conditions of the award specify that as a ground for termination."); *see also* 2 C.F.R. § 200.340(a)(4) ("The Federal award may be terminated in part or its entirety as follows: . . . (4) By the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities."). In other words, according to Plaintiff's own theory, the Court must interpret Condition 32 (termination or suspension) to determine whether the termination was proper under 2 C.F.R. § 200.340(a)(4). *See* Compiled

9

Award Documents (ECF No. 16-3) at 20, 43, 68, 91, 114.  That is not in this Court's bailiwick; it is in the Court of Federal Claims', as Congress intended.  *Ingersoll-Rand*, 780 F.2d at 80.  When district courts have strayed from these principles, they have seen their orders stayed on appeal. *Compare Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, Civ. A. No. 25-0702, 2025 WL 890560, at *3 (D. Md. Mar. 21, 2025), *with Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025).

Plaintiff also invokes the unremarkable proposition that "agencies themselves frequently cabin their own discretionary funding determinations by generating formal regulations or other binding policies that provide meaningful standards for a court to employ when reviewing agency decisions under the APA."  *Pol'y & Rsch., LLC v. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 76 (D.D.C. 2018); *see also* Pl.'s Opp'n at 19–20.  But *Policy & Research* dealt with a different regulation, 45 C.F.R. § 75.372, and a very different situation.  There, the Department of Health and Human Services announced that it was "shorten[ing] the project period to end on June 30, 2018[,] at the end of this budget year," and contested whether that announcement qualified as a termination at all.  *Pol'y & Rsch.*, 313 F. Supp. 3d at 70; *see also id.* at 76 ("The question here is whether or not this provision of the HHS regulations *applies* to the agency's professed shortening of Plaintiffs' project periods, and it is clear to this Court that it does, for several reasons." (emphasis in original)).  Here, in contrast, there is no dispute that the Office terminated the cooperative agreements and explicitly invoked 2 C.F.R. § 200.340(a)(4), which—according to Plaintiff, Pl.'s Opp'n at 19—turns on the words of the contractual termination provision.  Termination Ltr. (ECF No. 4-2) at 19.  Whether this contractual termination provision permitted the Office to terminate the cooperative agreements is a question that Congress intended to be answered in the Court of Federal Claims, not this Court.  *See Ingersoll-Rand*, 780 F.2d at 78

("This complaint . . . calls for knowledge of the government contracting process. In these circumstances, we must implement the congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes.").

## IV.    Defendants' First Amendment Argument Clearly Applied to Each of Plaintiff's First Amendment Claims.

As Defendants noted in their opening brief, Plaintiff "alleges that Defendants' termination decision violates the First Amendment, as retaliation, Compl. ¶¶ 82–89, viewpoint discrimination, *id.* ¶¶ 90–98, or violation of the spending power, *id.* ¶¶ 99–102." Defs.' Br. (ECF No. 16-1) at 30. Defendants urged that "it is [ ] well settled that the government does not run afoul of the First Amendment by electing not to fund certain activities, including ones that facilitate speech on issues of public importance" and that "Defendants do not violate Plaintiff's First Amendment rights merely 'by declining to' further 'subsidize' Plaintiff's alleged 'First Amendment activities' with the Office's funding." *Id.* Defendants' argument in Section IV clearly applied to all three of Plaintiff's First Amendment claims. *Id.* at 30–32. Plaintiff is mistaken in repeatedly claiming that Defendants have raised no defense to Plaintiff's retaliation claim.

Plaintiff is also incorrect that Defendants do "not even attempt to dispute [certain] factual allegations" pertaining to Plaintiff's First Amendment claims. Pl.'s Opp'n at 7. As Defendants explained in their motion to dismiss, Plaintiff's First Amendment claims rely upon a mischaracterization of a memorandum from Deputy Attorney General Todd Blanche ("Blanche Memorandum"), which "did not purport to terminate any of Plaintiff's grants" but instead "provided guidance to all Department employees regarding their engagement with Plaintiff as part of their official duties" and "when their actions could be perceived as taken on behalf of the Department." Defs.' Br. at 31 & n.3; *see id.* at 4 ("That memorandum did not purport to address, let alone require, the termination of any of Plaintiff's cooperative agreements,"). Despite

11

Plaintiff's misreading, the Blanche Memorandum is solely addressed to ensuring that the Department remains and is perceived as apolitical because the Department must "represent all Americans regardless of ideology or political preferences," and it must be careful to avoid "legitimiz[ing] [the] positions" of any outside organization.   Mem. from Deputy Att'y Gen. Blanche to All Dep't Emps. at 1-2 (Apr. 9, 2025), https://perma.cc/P6E7-B68K.   This is particularly important with regard to Plaintiff, who frequently invokes its interactions with the federal government and even judges to support its litigation positions.  *See, e.g.*, Brief of Amicus Curiae Am. Bar Ass'n, *Escobar v. Texas*, No. 23-934, 2024 WL 1417178, at *1 (U.S. Mar. 27, 2024) (invoking "membership" of "attorneys in [the] federal government[ ]" and of "judges" to support it "interests" as an amicus).

    In all events, and notwithstanding that Plaintiff's allegations are contradicted by the very documents incorporated into the Complaint, (1) the remedy Plaintiff seeks is the rescission of the termination of its award documents, which is a "quintessentially contractual remedy" that is subject to the Tucker Act, *Widakuswara*, 2025 WL 1288817, at *4; and (2) it is well settled that the federal government "can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way," *Rust v. Sullivan*, 500 U.S. 173, 193 (1991).  With regard to the first point, Defendants refer to their jurisdictional argument in Parts I and II, *supra*.  The Court of Federal Claims is perfectly capable of ruling on the merits of First Amendment arguments, provided it otherwise has jurisdiction.  *See, e.g.*, *Klingenschmitt v. United States*, 119 Fed. Cl. 163, 184 (2014) ("[I]t is clear under *Holley* that the Court possesses jurisdiction to decide Dr. Klingenschmitt's First Amendment claims in connection with its review of his wrongful discharge." (citing *Holley v. United States*, 124 F.3d 1462, 1466

(Fed. Cir. 1997))); *see also Holley*, 124 F.3d at 1466 ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful. The determination of Mr. Holley's entitlement to remedy under 37 U.S.C. § 204 may include consideration of whether his removal violated constitutional rights.").

With regard to the second point, it is equally well settled that the government does not run afoul of the First Amendment by electing not to fund certain activities, including ones that facilitate speech on issues of public importance. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (confirming that the government is "not required" by the First Amendment "to assist others in funding the expression of particular ideas, including political ones"); *cf. Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 549 (1983) ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right[.]"). Defendants do not violate Plaintiff's First Amendment rights merely "by declining to" further "subsidize" Plaintiff's alleged "First Amendment activities" with the Office's funding. *Regan*, 461 U.S. at 548; *see also Ysursa*, 555 U.S. at 355 (explaining that the First Amendment "does not confer an affirmative right to use government payroll mechanisms for the purpose of obtaining funds for expression"). The federal government need not subsidize Plaintiff with federal funding at all. *See Rust*, 500 U.S. at 193. Plaintiff's theory of liability, if accepted, would risk impermissibly transforming every pause or suspension in the funding of grants or cooperative agreements on policy grounds into a First Amendment violation. *See Nat'l Urb. League v. Trump*, Civ. A. No. 25-0471 (TJK), 2025 WL 1275613, at *18 (D.D.C. May 2, 2025) ("A different rule would 'risk . . . transmogrifying virtually every dispute involving an alleged breach of contract by' the government 'into a constitutional

case.'" (alteration in original; quoting *Redondo-Borges v. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005))).

To the extent Plaintiff urges that this case is on the wrong side of the line described in *Agency of International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205 (2013)—i.e., "the relevant distinction that has emerged from our cases is between conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself," *id.* at 214–15—it bears emphasis that this "line is hardly clear." *Id.* at 215; *see also id.* at 217 ("As noted, the distinction drawn in these cases—between conditions that define the federal program and those that reach outside it—is not always self-evident."). The statute at issue in *Alliance for Open Society* fell on the unconstitutional side of the line. *Id.* at 221. But that was because it contained "two conditions": "First, no funds made available to carry out the Leadership Act 'may be used to promote or advocate the legalization or practice of prostitution or sex trafficking.' [22 U.S.C.] § 7631(e). Second, no funds made available may 'provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking, except . . . to the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AIDS Vaccine Initiative or to any United Nations agency.' § 7631(f)." *All. for Open Soc'y*, 570 U.S. at 210. The first condition, which was unchallenged in that litigation, "by itself ensure[d] that federal funds will not be used for the prohibited purposes." *Id.* at 218. The second condition—the policy requirement—"therefore must be doing something more." *Id.* Here, in contrast, this case turns solely on a decision to terminate a contract for failure to effectuate agency priorities, making it more analogous to the first condition, not the second.

Accordingly, and for either of these independent reasons, Plaintiff's First Amendment claims—whether framed as retaliation, viewpoint discrimination, or violation of the spending power—with the latter likewise at issue in *Widakuswara*, 2025 WL 1288817, at *5—should be dismissed.

## V.    Plaintiff's Arguments Pertaining to Its Due Process Claim Fail.

As Defendants explained in their opening brief, Plaintiff's due process argument is entirely dependent on the terms of the award documents. *See, e.g.*, Compl. ¶ 114 ("By providing that the grants may not be terminated except for specified causes, the grant agreements give rise to property interests protected by the Due Process Clause."). And Plaintiff's requested relief demands the rescission of the termination of these contractual awards. *Id.* at Prayer. Plaintiff's due process claim is thus not appropriately brought in this Court.

In the due process section of the Opposition, Plaintiff curiously attacks Defendants for "completely ignor[ing] [ ] binding precedent"—namely, *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)). Pl.'s Opp'n at 28. As an initial matter, "the holdings in [another decision] and *Transohio Savings* are no longer good law." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). *Transohio*'s statement that litigants "may bring statutory and constitutional claims for specific relief in federal district court" cannot be squared with more recent precedents. *See, e.g.*, *Widakuswara*, 2025 WL 1288817, at *5 ("Tucker Act governs challenge to contract termination, 'despite plaintiff's allegations of statutory and constitutional violations'" (quoting *Ingersoll-Rand*, 780 F.2d at 78)). But, moreover, the supposedly "straightforward" lesson that Plaintiff takes from *Transohio* and the case on which it relied, *Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986), *see* Pl.'s Opp'n at 28, is inconsistent with what *Sharp* said, too. *Sharp* confirms that "[t]he District Court lacked jurisdiction over

appellant's claim for a declaration that the United States was in material breach of its contractual obligations and for an injunction preventing that breach." *Sharp*, 798 F.2d at 1524.  The Complaint here seeks precisely that.  *See* Compl. at Prayer ((A) "Declare that the termination of [Plaintiff's] grants is unlawful and null and void and set the termination of the grants aside";  (B) "Grant . . . injunctive relief barring Defendants from enforcing or otherwise giving effect to the termination of [Plaintiff's] grants"; (C) "Grant . . . injunctive relief barring Defendants from re-obligating funds used to support [Plaintiff's] terminated grants"; (D) "Stay the termination of the grants"; (E) "Enter an order . . . that directs Defendants to take all steps necessary to ensure that DOJ disburses funds on [Plaintiff's] grants in the customary manner and in customary timeframes"). Accordingly, even under *Transohio* and *Sharp*, the relief Plaintiff has requested here is barred by the Tucker Act.

Lastly, to the extent Plaintiff attempts to rebut the exaction analogy by citing *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), that care arose under very different facts.  *See id.* at 1315–16.  The case addressed offsets made to other grants to account for excess funding that the agency had improperly provided to the tribe.  *Id.*  The case did not concern the termination of a grant or cooperative agreement, where, like here, money that had been awarded to the recipient was then taken away.  *See id.* at 1319 ("An illegal exaction claim must be based on property *taken* from the claimant, not property left *unawarded* to the claimant, rendering the Tribes' exaction claim invalid on its face." (emphases in original)).  Here, Plaintiff is not fighting over money "left *unawarded*" to it.  *Id.* (emphasis in original).  Accordingly, under the Tucker Act, Plaintiff's due process claim should be brought, if at all, in the Court of Federal Claims.

**VI.**    **Plaintiff's Arguments Pertaining to Its Equal Protection Claim Fails.**

Plaintiff's Opposition confirms that its equal protection claim is just a rehash of its First Amendment claim.  Plaintiff argues that "'there is no rational basis for the difference in treatment,' because the basis for the difference is the government's stated disagreement with viewpoints that [Plaintiff] has expressed through protected speech and petitioning activities."  Pl.'s Opp'n at 30 (quoting Compl. ¶ 105).  Whatever the merits of that claim, it poses a question under the First Amendment, not equal protection.  For the reasons explained above and before, that claim fails.

**VII.**    **Plaintiff's Opposition Does Not Dispute (1) That Plaintiff Has No Viable Claim Pertaining to the Purported Termination of the Two Previously Concluded Cooperative Agreements, (2) That Plaintiff Does Not Have a Right to Compel the Office to Continue the Cooperative Agreements Past Their Terms; or (3) That the Office Should Be Permitted to Terminate the Cooperative Agreements for Any Reason Listed in Condition 32.**

As Defendants discussed in their opening brief, Defs.' Br. at 38–40, there are three additional limitations on this action.  First, Plaintiff has not alleged, let alone plausibly alleged, that Defendants are failing to comply with any closeout obligations pertaining to those two closed cooperative agreements, *see generally* Compl., and Defendants have provided an express assurance that they will continue to comply with their closeout obligations under those award documents.  *See* Declaration of Erin M. Lorah (ECF No. 16-2) ¶ 5.  Plaintiff's Opposition does not identify any closeout obligations that they believe Defendants will not comply with, and Plaintiff has accordingly conceded that it lacks standing to litigate a hypothetical dispute about unidentified closeout obligations.

Second, Plaintiff is not seeking an order for the Office to continue its cooperative agreements past their terms.  For two of these cooperative agreements, the terms end September 30, 2025; for a third, the term ends September 30, 2026; and for the last two, the terms end September 30, 2027.  *Id.* ¶ 4.  Plaintiff has not disputed that the Complaint contains a

typographical error pertaining to the end date for one of the five cooperative agreements.  *See* Defs.' Br. at 12 n.1 ("The Complaint contains a typographical error regarding the end date for this cooperative agreement.  *Compare* Compiled Award Documents at 76 (end date: September 30, 2026), *with* Compl. ¶ 54 (listing end date as September 30, 2027).").

Third, Plaintiff's Opposition does not dispute that the Office may terminate the cooperative agreements for any reason listed in Condition 32.  *See* Compiled Award Documents (ECF No. 16-3) at 20, 43, 68, 91, 114 (Condition 32: termination or suspension); *see also* Compl. ¶ 113 (confirming that "all five [of Plaintiff's] grants authorize DOJ to terminate the award": "(1) if there has been a 'substantial failure' by [Plaintiff] 'to comply with applicable laws, regulations, and/or the terms and conditions of the award or relevant solicitation'; (2) if [Plaintiff] has failed 'to make satisfactory progress' toward program goals; or (3) if [Plaintiff] has proposed or implemented 'project changes' such that, if they had been submitted originally, 'the application would not have been selected for funding.'" (quoting Condition 32)).  And whether Condition 32 permitted the Office to terminate the five cooperative agreements here for the reason stated in the termination letter is an issue to be decided by the Court of Federal Claims, not this Court.  *See Widakuswara*, 2025 WL 1288817, at *6 (encouraging "the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress," and explaining that "[b]ecause . . . grant disputes directly concern the public fisc, Congress has limited the resolution of these potentially costly claims to specialized tribunals such as the . . . CFC" and "[w]e must respect those boundaries").

*    *    *

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: May 9, 2025                    Respectfully submitted,
     Washington, DC

                                          EDWARD R. MARTIN, JR., D.C. Bar #481866
                                          United States Attorney

                              By:         */s/ Douglas C. Dreier*
                                          DOUGLAS C. DREIER, D.C. Bar #1020234
                                          Assistant United States Attorney
                                          601 D Street, NW
                                          Washington, DC 20530
                                          (202) 252-2551

                                          *Attorneys for the United States of America*